**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TAMMY M. PEDICINI,         )
                                  )
        Plaintiff,        )
                                  )      No. 12 C 6018
vs.                             )
                                  )      Magistrate Judge Rowland
CAROLYN W. COLVIN, Acting     )
Commissioner of Social Security,   )
                                  )
        Defendant.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tammy M. Pedicini, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of her application for disability insurance benefits. For the reasons set forth below, the Court remands this case for further proceedings consistent with this opinion.

## I. Procedural History

On November 16, 2009, Ms. Pedicini filed an application for disability insurance benefits. (R. 188-94). On June 8, 2010, she also filed an application for supplemental security income. (R. 195-201). In both applications, Ms. Pedicini alleged a disability onset date of October 28, 2007, when she sustained an injury to her foot. (R. 50). The Social Security Administration denied her claims for both disability insurance benefits and SSI[1] on February 22, 2010, and then again upon

---

[1] The Social Security Administration applies "virtually identical" standards when evaluating "disability" for disability insurance benefit applications and supplemental security income applications. *Craft v. Astrue,* 539 F.3d 668, 674 n.6 (7th Cir. 2008). The regulations governing the determination of disability for DIB are found at 20 C.F.R. §

reconsideration on June 8, 2010. (R. 100-02). Ms. Pedicini filed a written request for a hearing, and on May 25, 2011, an Administrative Law Judge ("ALJ") conducted a hearing. (R. 42-85). At that hearing, Ms. Pedicini testified, as did an impartial vocational expert. (*Id.*)

On June 8, 2011, the ALJ issued a written opinion, finding that Ms. Pedicini was not disabled prior to October 14, 2010, but was disabled after that date. (R. 25). Ms. Pedicini then requested Appeals Council review, but the request was denied, rendering the ALJ's decision final. (R. 102-04). Ms. Pedicini then requested judicial review, for which this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties and 28 U.S.C. § 636(c), the case was reassigned to Magistrate Judge Nolan on September 26, 2012 for all further proceedings, including entry of final judgment. (Dkt. 9). Upon Judge Nolan's retirement from the bench, the case was reassigned to Magistrate Judge Rowland on October 1, 2012. (Dkt. 13).

## II. Summary of Administrative Record

In arriving at her decision in this case, the ALJ relied on an administrative record consisting of Ms. Pedicini's medical files from October 28, 2007 to April 11, 2011; hearing testimony from Ms. Pedicini and an independent vocational expert; and physical and psychological evaluations prepared by the Illinois Department of Disability Determination Services ("DDS"). Those components of the record are summarized in brief below.

---

404.1501 et seq. The SSI regulations are virtually identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq.*

### A. Treating Physician Medical Records

The ALJ in this case considered voluminous medical records, generated by at least 16 different treating sources and relating to a number of different injuries/conditions, including Ms. Pedicini's right foot injury, carpal tunnel syndrome, headaches and depression, and back pain.

### i. Foot Injury

On October 28, 2007, Ms. Pedicini kicked a steel and glass door in her home, acting out of apparent anger or frustration when her children invited friends over without her permission. (R. 325, 414). Ms. Pedicini suffered lacerations to the nerves and tendons in the plantar aspect of her foot, which necessitated surgical repair. (R. 321, 325). Following surgery, she developed deep vein thrombosis as a result of her injury. (R. 332). She received medication and therapy, but she continued to report significant pain and discomfort. (R. 321). In April 2008, she was diagnosed with nerve damage. (R. 350). A May 2008 examination revealed limited motion and strength in her right big toe, a significant amount of scar tissue with related sensitivity in the foot, diminished foot sensation, and a significant antalgit gait (*i.e.*, a limp). (R. 321).

Ms. Pedicini was referred to pain management specialist, Dr. Firdous Hashim, who she saw from 2008 to 2010. (R. 370). Dr. Hashim diagnosed complex regional pain syndrome. (R. 372). He noted that Ms. Pedicini's foot pain radiated upward and increased in intensity with prolonged sitting or standing. (R. 375). A December 2008 electromyogram (which measure electrical activity of muscles at

rest to assess nerve function) showed chronic lumbar nerve root irritation. (R. 376). Ms. Pedicini's course of treatment included neuroma and scar tissue injections, sympathetic nerve blocks, and several different pain medications. (R. 375). Ms. Pedicini's foot pain was alleviated somewhat by elevating her foot and staying off her foot. (R. 375). She tried physical therapy, but stopped after it exasperated her pain. (R. 380). Ms. Pedicini reported that her limp caused low back pain, upper back pain, and thoracic pain as of September 2009 and continuing thereafter. (R. 375). She also reported that numbness in her foot often caused her to fall. (R. 481). She visited the emergency room on two occasions following falls: December 23, 2009 and July 24, 2010. (R. 405-06, 717). She visited the emergency room on December 20, 2007 for right leg deep vein thrombosis related to her foot injury (R. 421-22), and she visited again on July 14 and 18, 2008 for severe foot pain. (R. 425-26.)

### ii. Carpal Tunnel Syndrome

Ms. Pedicini also suffers from carpel tunnel syndrome in her right hand. (R. 375, 477). She first experienced pain in December 2008, which she described as a constant burning tingling sensation. (R. 376). A February 2010 electromyography (in which the nerve of a muscle is stimulated by application of an electric current and then studied) demonstrated right carpal tunnel syndrome, affecting both sensory and motor nerves. (R. 713). The pain temporarily abated with sympathetic nerve block treatment, in which a pain specialist injects anesthetic solution into an affected network of nerves. But, in September 2009, the pain returned along with bilateral hand numbness and general weakness. (R. 375-77, 472, 477).

4

### iii. Headaches and Depression

The medical records also indicate that Ms. Pedicini reported depression and ongoing headaches since 1995 (R. 61, 375, 472, 477, 507, 536, 693). She was prescribed several medications to address those conditions. *Id.*

### iv. Back Problems

Ms. Pedicini also received treatment for back pain. A January 2009 lumbar spine magnetic resonance imaging test showed a transitional lumbosacral segment (a congenital anomaly of the vertebrate), disc protrusion, and an annular tear (an injury to one of the disks that separate and stabilize the spine's vertebrates). (R. 365-66). A February 2010 cervical spine x-ray showed multiple level disc space narrowing with mild to moderate bilateral foraminal narrowing (causing compression of spinal nerves). (R. 743). Ms. Pedicini went to the emergency room for back pain on April 4, 2008 and June 28, 2008 and three times in October 2010. (R. 723, 726, 729). An October 2010 lumbar magnetic image showed disc herniation. (R. 732, 752-53). Her pain intensified in mid-2010, and she had back surgery in October 2010[2]. (R. 54, 57).

### B. Hearing Testimony

Ms. Pedicini was born on October 17, 1961. (R. 47). She lives with her two children. (R. 46). She has a driver's license, but has not been able to drive since her foot injury. (R. 47). She frequently falls, which she understands to be the result of the lack of feeling in her toe. (R. 51). She experiences arthritis and constant pain in her hips, which she understands to have been caused by her limping. (R. 52). The

---

[2] The ALJ concluded that Ms. Pedicini was rendered disabled as of October 2010.

carpal tunnel syndrome causes numbness in her hands, and she regularly drops things. (R. 58, 60). She has been treated for depression since 1995. (R. 61). She says that medication and support group meetings help her. (R. 62). She experiences lapses in memory. (R. 63).

An impartial vocational expert, Matthew Lampley, also testified at the hearing. The ALJ presented Mr. Lampley with two hypothetical scenarios concerning Ms. Pedicini's medical impairments and asked if she would be able to find employment given those impairments. Mr. Lampley testified as follows. First, assuming Ms. Pedicini is restricted to sedentary work that involves no concentrated exposure to heights or hazards, no operation of foot controls with the right foot, simple instructions and routine tasks, the ability to use a cane for ambulation (not for balance), frequent (but not constant) use of right dominant hand, she would be able to perform the requirements of certain jobs in her regional economy, including bench hand and final assembler. (R. 81). If, however, her hand use is further restricted to "only occasional handling and fingering with the right dominant hand," there would be no jobs available. Similarly, if Ms. Pedicini had to miss three days of work per month, there would be no jobs available. And, if Ms. Pedicini were off task 30 percent of the time due to pain problems and side effects of medication, there would be no jobs available. (R. 82).

### C. DDS Evaluations

The ALJ also considered physical and psychological evaluations prepared by the Illinois Department of Disability Determination Services ("DDS"). (R. 850-55).

6

Those evaluations are typically prepared on the basis of the medical records on file with the Social Security Administration. Three separate DDS evaluators determined that there was insufficient medical evidence to evaluate Ms. Pedicini's residual functional capacity for the period before her date last insured on December 31, 2009. (R. 595-608; 850-55).

### E. The ALJ's Decision

The ALJ found that Ms. Pedicini suffered from "severe impairments" since her alleged onset date of October 28, 2007 (when she injured her foot), but that her conditions, taken together, did not render her disabled until October 14, 2010, when she experienced intensified back pain and underwent back surgery. (R. 30). Ms. Pedicini now seeks judicial review of the ALJ's determination that she was not disabled for the three-year period from October 28, 2007 to October 14, 2010.

## III. Standard of Review

The standard for review of an appeal from the Social Security Administration denying disability benefits is well established. To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing not only past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

The regulations under the Social Security Act set forth a five-step process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4). Under these regulations, an ALJ must consider (1) whether the claimant presently has substantial, gainful employment; (2) whether the claimant's alleged impairment or combination of alleged impairments is severe; (3) whether the claimant's impairment(s) meet(s) or equal(s) the specific impairments that are listed in the appendix to the regulations as severe enough to preclude gainful employment; (4) whether the claimant is unable to perform his or her past relevant work; and (5) whether the claimant is unable to perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1520(b)-(f); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). A negative answer at any step other than Step 3 precludes a finding that the claimant is disabled. *Young,* 957 F.2d at 388. The claimant bears the burden of proof at Steps 1-4. As part of Step 3 (whether claimant's impairments are severe enough to preclude gainful employment), the ALJ's analysis typically involves an evaluation of the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). This RFC is also used for purposes of Step 4 to determine whether the claimant may work in his or her previous occupations. *Id.*

At Step 5, the burden shifts to the Commissioner, who must "provid[e] evidence showing that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If a claimant's RFC allows him to perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision, courts may not decide facts anew, reweigh evidence, or substitute their judgment for the articulated judgment of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will uphold the Commissioner's decision if it is supported by "substantial evidence," and is free of legal error. 42 U.S.C. § 405(g) (2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.,* 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner (and ALJ, by extension), not the courts. *See Heir v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to evidence that the ALJ finds more credible).

However, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his or] her conclusion,"

*Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001), and "must confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or discuss only the evidence that favors his or her decision. *See Herron,* 19 F.3d at 334. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ must state the reasons he or she accepted or rejected "entire lines of evidence." *Id.* at 333; *see also Young,* 957 F.2d at 393 (in order for there to be a meaningful appellate review, the ALJ must articulate a reason for rejecting evidence "within reasonable limits"). The written decision must include specific reasons that explain the ALJ's decision, so that the reviewing court can ultimately assess whether the determination was supported by substantial evidence or was "patently wrong." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)).

## IV. Discussion

Ms. Pedicini raises five arguments in support of her request for reversal and remand of the agency's decision: (A) the ALJ failed to properly consider the opinion of Ms. Pedicini's treating physician, Dr. Long; (B) the ALJ's residual functional capacity lacked support in the record; (C) the ALJ failed to properly determine the onset date of disability; (D) the ALJ's functional capacity assessment failed to include a requisite discussion of certain impairments; and (E) the ALJ's credibility

determination failed to consider Ms. Pedicini's subjective complaints of disabling pain.

### (A) Consideration of Treating Physician's Opinion

Ms. Pedicini first argues that the ALJ erred in failing to properly consider the medical opinion of her long-time treating physician, Dr. Long. Dr. Long completed a residual functional capacity questionnaire in April 2011 stating that Ms. Pedicini required a cane or crutches when standing or walking, and that the pain and other symptoms would frequently interfere with the attention and concentration necessary to complete even simple tasks. (R. 843-49). The ALJ gave that assessment "great weight" in concluding that Ms. Pedicini was disabled as of October 14, 2010 (R. 31); but she did not reference it in concluding that Ms. Pedicini was not disabled prior to that date.

Ms. Pedicini argues that the ALJ erred in failing to explain why Dr. Long's opinion should not be given controlling weight for the period before October 14, 2010. In response, the Commissioner argues that the ALJ's assessment was proper because Dr. Long did not provide an "onset date" for the impairments she described.

The Court agrees with the Commissioner. Claimant is correct that ALJs must pay close attention to treating physicians' opinions and must specifically articulate the weight they give to those opinions. ALJs are not required, however, to refer to a treating physician opinion were the matter at issue is not addressed in the opinion. *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010) (ALJ's decisions are entitled to a "commonsensical reading"). Dr. Long's opinion referred only to the state of Ms.

Pedicini's impairments at the time of her assessment (*i.e.* April 2011), and it did not specify when those impairments developed. (R. 843-45). The ALJ accorded that opinion "great weight" in determining that Ms. Pedicini's foot issues, back issues, and carpal tunnel syndrome (in combination) resulted in impairments severe enough to warrant a finding of disability. Given that Dr. Long's opinion was silent as to the onset date of Ms. Pedicini's various impairments, it was not unreasonable for the ALJ to look elsewhere in the record for that information. There was no need for the ALJ to refer back to Dr. Long's opinion when analyzing Ms. Pedicini's pre-2010 RFC.

**(B) Residual Functional Capacity Assessment and Onset Date**

Ms. Pedicini next argues that it was unreasonable for the ALJ to conclude that she had materially better functional capacity before October 14, 2010 than after that date. She argues that the ALJ's RFC assessments lacked support in the record, and that the ALJ failed to follow regulations in determining the disability onset date. Because those two arguments are related, the Court addresses them together.

When an ALJ finds a claimant disabled, the ALJ must determine the onset date of that disability. Social Security Ruling 83-20 provides a procedure for that determination. In the case of slowly progressive impairments (as opposed to impairments caused by a single traumatic event), "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA

12

(or gainful activity) for a continuous period of at least 12 months or result in death."
SSR 83–20 at *3; *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir.
2005). In determining onset date, SSR 83-20 directs the ALJ to consider the
claimant's allegations, date last worked, and medical along with other evidence.
SSR 83–20 at *2. The onset date alleged by the claimant should be the starting
point of the analysis, and that date "should be used if it is consistent with all of the
evidence available." SSR 83–20 at *3. Social Security Ruling 83-20 further states
that, "[r]eports from all medical sources (*e.g.*, physicians, hospitals, and government
agencies) which bear upon the onset date should be obtained to assist in
determining when the impairment(s) became disabling." SSR 83–20 at *2.

In this case, the ALJ found an onset date of October 14, 2010. She found that
Ms. Pedicini was capable of performing sedentary tasks—despite her foot injury,
carpal tunnel syndrome, and back pain—until October 14, 2010, and after that date,
her back problems intensified, rendering her unable to work. Ms. Pedicini now
argues that the record does not support the ALJ's differing RFC assessments for the
periods before and after October 14, 2010. For example, Ms. Pedicini asserts that
she needed a cane to walk both before and after the onset date, that she had
concentration difficulties before and after the onset date, and that she needed to
change positions at will before and after the onset date. (Dkt. 21 at 12-13). In
response, the Commissioner argues that there is adequate support in the record for
the ALJ's conclusion that Ms. Pedicini's back pain-related impairments were more
severe after the onset date than before. For example, the ALJ notes that Ms.

Pedicini reported activity levels above sedentary throughout 2008 and 2009, and the record indicates that she was able to grocery shop, cook, and do some house cleaning during that time. (R. 28-29).

The Court finds that the ALJ failed to adequately explain her deviant RFC assessments for the periods before and after October 14, 2010, and thus erred in determining onset date. The independent vocational expert in this case testified that, given the impairments that existed before and after October 14, 2010, if Ms. Pedicini had to miss three days of work per month, there would be no jobs for her in the regional economy; and, if she were off task 30 percent of the time due to pain problems and side effects of medication, there would also be no jobs available to her. (R. 82). There is ample evidence in the medical record indicating that Ms. Pedicini suffered from concentration difficulties as well as bad days owing to chronic pain both before *and* after October 14, 2010. (R. 843, 847, 477, 522 (concentration difficulties); R. 66, 228, 234, 236, 266-69, 278, 576, 772, 820, 846 (chronic pain)).

To the extent that the ALJ found the above-noted evidence inconsistent with other evidence indicating that Ms. Pedicini had a higher RFC in the pre-October 14, 2010 period (*e.g.* notations about her "activity level" and positive effects of pain treatments), the ALJ should have sought additional evidence from Ms. Pedicini and her care providers, or sought counsel from an independent medical advisor to reconcile the discrepancy. Social Security Ruling 83-20 provides that "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." When information before the ALJ

14

is, itself, inconsistent, "additional development may be needed to reconcile the discrepancy." *Id*. The ALJ failed to develop the record in this regard, despite the need to do so. Furthermore, the state agency medical consultants all stated that there was insufficient evidence to assess RFC from the period before Ms. Pedicini was last insured on December 31, 2009. Thus, the Court finds that the ALJ failed to adhere to SSR 83-20's requirement that the onset date be fully reconciled with the record.

On remand, the ALJ cannot reject Ms. Pedicini's alleged onset date and evidence in support thereof *solely* on that basis of evidence concerning Ms. Pedicini's ability to intermittently perform basic daily activities. The Seventh Circuit has repeatedly criticized ALJs for relying on evidence of that sort when rejecting claims of disability. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer) (internal parenthetical omitted); *Punzio v. Astrue,* 630 F.3d 704, 712 (7th Cir. 2011) ("her ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace"); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000) (performing household chores is a two hour interval, cooking, shopping, vacuuming, and watching grandchildren not inconsistent with disability).

Because the Court finds in Ms. Pedicini's favor concerning errors made in the ALJ's determination of onset date, the Court need not address Ms. Pedicini's more minor arguments concerning the ALJ's failure to address certain impairments and subjective complaints of pain.

## V. CONCLUSION

For the reasons stated above, and pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 5, 2013

_____
MARY M. ROWLAND
United States Magistrate Judge