UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAMMY PEDICINI,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

No. 12 C 6018

Magistrate Judge Mary M. Rowland

# MEMORANDUM OPINION AND ORDER

Plaintiff Tammy Pedicini filed this action, seeking review of the Social Security Commissioner's denial of her application for disability insurance benefits. On December 5, 2013, the Court remanded the case to the Administrative Law Judge (ALJ) for further evaluation. Ms. Pedicini now seeks to recover her attorneys' fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). For the reasons set forth below, the application for fees is granted.

## I. BACKGROUND

Ms. Pedicini applied for disability insurance benefits on November 16, 2009, alleging she became disabled on October 28, 2007, because of a severe injury to her foot. An ALJ denied her application in part, finding that Ms. Pedicini was not disabled prior to October 14, 2010, but was disabled after that date. On review, the Court found that the ALJ failed to adequately explain her deviant residual func-

tional capacity assessments for the periods before and after October 14, 2010, and thus erred in determining Ms. Pedicini's disability onset date. The Court vacated the Commissioner's decisions on that basis and remanded the case for further consideration by the ALJ. Ms. Pedicini's counsel now moves for attorney's fees and costs under EAJA. Counsel seeks $9,414.48 for 51.7 hours of work on the case (50.1 hours of attorney time at $184.88 per hour and 1.6 hours of legal assistant time at $95 per hour) as well as $16.70 in costs. (Mot. ¶ 11 & Ex. C). In his reply, Counsel supplemented his fee petition to reflect the 5.5 hours drafting the reply memorandum. (Reply 9). The Court finds these hours reasonable. Thus, Counsel seeks a total of $10,431.32 for 57.2 hours of work on the case (55.6 hours of attorney time at $184.88 per hour and 1.6 hours of legal assistant time at $95 per hour) as well as $16.70 in costs. (*Id.*).

## II. DISCUSSION

The EAJA provides that the court "shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust." 28 U.S.C. § 2412(d)(1)(A). The EAJA provides a maximum rate of $125 per hour for attorney's fees, but permits the court to award higher fees in certain circumstances. *Id.* § 2412(d)(2)(A)(ii).

In this case, the parties agree that Ms. Pedicini is the prevailing party, and the government does not allege any "special circumstance." The only issues before the

court are (A) whether the Social Security Commissioner's position was "substantially justified," and, if so, (B) whether the $184.88 hourly rate, which exceeds the presumptive $125 per hour statutory maximum, is warranted.

**A. Substantially Justified**

Although the EAJA does not define "substantial justification," the Supreme Court has defined the term to mean "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Expanding on this definition, the Seventh Circuit explained, " 'Substantially justified' does not mean 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992). The substantial justification standard is different than the substantial evidence standard, which is used to evaluate the merits of a claimant's request for remand. *See Pierce*, 487 U.S. at 568–69. Thus, a loss on the merits does not automatically constitute a lack of substantial justification. *Id.* at 569. The Commissioner bears the burden of proof in showing that the government's litigation position was substantially justified. *Id.* at 565.

It is important to note, however, that a proceeding to recover fees under EAJA "is intended to be summary . . . . The EAJA is meant to open the doors of the courthouse to parties, not keep parties locked in the courthouse disputing fees well after the resolution of the underlying case." *Sosebeee v. Astrue*, 494 F.3d 583, 588 (7th Cir. 2007) (internal quotation marks omitted). The Supreme Court has admonished

that a request for attorney's fees "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In this case, the Court remanded this matter for further administrative proceedings after finding that the ALJ lacked evidentiary support for her conclusion that Ms. Pedicini's disability onset date was October 14, 2010, rather than October 28, 2007, as Ms. Pedicini alleged. The Court reasoned as follows:

> The Court finds that the ALJ failed to adequately explain her deviant RFC assessments for the periods before and after October 14, 2010, and thus erred in determining onset date. The independent vocational expert in this case testified that, given the impairments that existed before and after October 14, 2010, if Ms. Pedicini had to miss three days of work per month, there would be no jobs for her in the regional economy; and, if she were off task 30 percent of the time due to pain problems and side effects of medication, there would also be no jobs available to her. (R. 82). There is ample evidence in the medical record indicating that Ms. Pedicini suffered from concentration difficulties as well as bad days owing to chronic pain both before and after October 14, 2010. (R. 843, 847, 477, 522 (concentration difficulties); R. 66, 228, 234, 236, 266–69, 278, 576, 772, 820, 846 (chronic pain)).
>
> To the extent that the ALJ found the above-noted evidence inconsistent with other evidence indicating that Ms. Pedicini had a higher RFC in the pre-October 14, 2010 period (*e.g.* notations about her "activity level" and positive effects of pain treatments), the ALJ should have sought additional evidence from Ms. Pedicini and her care providers, or sought counsel from an independent medical advisor to reconcile the discrepancy. Social Security Ruling 83-20 provides that "the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." When information before the ALJ is, itself, inconsistent, "additional development may be needed to reconcile the discrepancy." *Id.* The ALJ failed to develop the record in this regard, despite the need to do so. Furthermore, the state agency medical consultants all stated that there was insufficient evidence to assess RFC from the period before Ms. Pedicini was last insured on December 31, 2009. Thus, the Court finds that the ALJ failed to adhere to SSR 83-20's requirement that the onset date be fully reconciled with the record.

> On remand, the ALJ cannot reject Ms. Pedicini's alleged onset date and evidence in support thereof solely on that basis of evidence concerning Ms. Pedicini's ability to intermittently perform basic daily activities. The Seventh Circuit has repeatedly criticized ALJs for relying on evidence of that sort when rejecting claims of disability. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer") (internal parenthetical omitted); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("her ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace"); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (performing household chores in a two hour interval, cooking, shopping, vacuuming, and watching grandchildren not inconsistent with disability).

(Dkt. 28 at 14–15).

As the passage excerpted above makes clear, the ALJ erred by (1) failing to comply with the requirements of SSR 83-20, and (2) over-relying on reports of daily activities. Given the nature of those errors, it cannot be said that the Commissioner's opposition to remand was substantially justified. "[A]n EAJA award is warranted where an ALJ's decision violates longstanding judicial precedent and fails to comply with agency rulings and regulations." *Eakin v. Astrue,* No. 09 CV 2823, 2011 WL 6156766, at *5 (N.D. Ill. Dec. 12, 2011); *Rice v. Apfel,* 16 F. Supp. 2d 971, 974 (N.D. Ill. 1998) (government's position is not substantially justified where ALJ fails to comply with requirements of SSR 83-20); *Rohan v. Barnhart,* 306 F. Supp. 2d 756, 768 (N.D. Ill. 2004) (awarding EAJA fees in part because the ALJ failed to comply with SSR 83-20 by determining onset date without adequate support in the record); *Williams v. Chater,* No. 96 C 1833, 1996 WL 650620 (N.D. Ill. Nov. 7, 1996) (awarding EAJA fees where ALJ failed to follow "well-established law").

## B. Amount of Fees

The EAJA prescribes a maximum rate of $125 per hour for attorney's fees. 28 U.S.C. § 2412(d)(2)(A)(ii). However, the statute allows a court to award a higher rate when "the court determines that an increase in the cost of living [since 1996, when the current version of the act was passed] or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.*; *accord Mathews-Sheets v. Astrue*, 653 F.3d 560, 562 (7th Cir. 2011). As to the cost-of-living factor, EAJA does not "create an *entitlement* to an inflation adjustment." *Mathews-Sheets*, 653 F.3d at 563. Instead, to establish a cost-of-living enhancement, "the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal services to a person seeking relief against the government." *Id.* The Commissioner objects to the hourly rate sought as unjustified by the EAJA provision for cost-of-living adjustments. (Resp. 6–9).

Here, Counsel seeks an hourly rate of $184.88 for attorney work performed on behalf of Plaintiff in this action. (Mot. ¶ 11). In support of this rate, Counsel relies on (1) the Consumer Price Index (CPI) detailing the effects of inflation on a nationwide basis from 1996 until January 2013, the month in which the majority of legal work was performed in this action; (2) the Commissioner's own increase in the maximum fee agreement limit for work performed at the administration level by 50% since 1996; (3) his affirmation that his noncontingency hourly rate has increased by 52% since 1996; (4) affidavits from six other local attorneys who charge hourly rates ranging from $165 to $550 for handling social security disability claims; and (5) his

affirmation that since 1996, his office expenses, including rent, salaries, health insurance, legal research tools, continuing legal education, and office supplies, have increased significantly due to inflation. (*Id.* ¶¶ 11, 15, 16 & Exs. A, D–I). The Commissioner has not presented any evidence in rebuttal. Moreover, other courts in the Northern District of Illinois have found that similar supporting evidence justifies an inflation adjustment to the EAJA hourly rate. *See Brent v. Astrue*, No. 11 C 964, 2012 WL 6685688, at *3 (N.D. Ill. Dec. 19, 2012) (collecting cases). Accordingly, the Court finds that Counsel's uncontradicted evidence adequately demonstrates that a cost-of-living increase from the $125 per hour statutory rate is justified.

The Commissioner also argues that the hourly rate of $184.88 is unreasonable because the majority of work was done by a contract attorney working part-time from her home in central Wisconsin. (Resp. 9). The Commissioner contends that Counsel has not established "that an enhanced fee, and particularly a fee at the same rate as the Chicago counsel of record, is justified in such circumstances." (*Id.*).

The Commissioner's contention is unpersuasive. The fact that Counsel's firm used a contract attorney to perform the majority of work in this matter, under Counsel's supervision, does not rebut Counsel's affirmation that his firm's office expenses have increased significantly since 1996. Even for attorneys who work outside of Counsel's office, administrative assistance still supports their efforts. Further, an affidavit from a Wisconsin attorney attached to the EAJA motion established a similar hourly-rate as the Chicago-area attorneys. (Mot. Ex. I). Moreover, the cost to Counsel's firm of the contract attorney's services is not the relevant inquiry, and an

hourly rate above the $125 statutory rate does not produce an improper windfall. *See* 28 U.S.C. § 2412(d)(2)(A) (providing that a fee award "shall be based upon prevailing market rates for the kind and quality of the services furnished"); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 587–89 (2008) (holding that under the EAJA, reimbursement for paralegal time should be based on "prevailing market rates," not at the paralegal's cost to the law firm).

Finally, the Commissioner argues that Plaintiff must demonstrate that without the requested cost-of-living adjustment, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case. (Resp. 7–8) (citing *Mathews-Sheets*, 653 F.3d at 562). Courts in the Northern District have reached different conclusions on whether *Mathews-Sheets* "imposes a dual burden of showing both the effects of inflation and that no competent attorney could be found at the statutory rate." *Amey v. Astrue*, 09 C 2712, 2012 WL 4738985, at *3 (N.D. Ill. Oct. 2, 2012) (collecting cases). However, "the Court need not resolve whether *Mathews-Sheets* imposes the dual requirement" if the Court is satisfied that Plaintiff has provided sufficient evidence to satisfy both statutory rationales for a rate increase. *Claiborne ex rel. L.D. v. Astrue*, 877 F. Supp. 2d 622, 626–27 (N.D. Ill. 2012). In *Claiborne*, the court awarded $13,372.84, representing an hourly rate of $181.25, after deeming sufficient the evidence provided to justify both rationales. *Id.* at 627. This evidence included representations of overhead and expense increases to maintaining a legal practice, comparable attorneys' declarations of their fees

for similar work, and the argument that the effective EAJA hourly rate for the risk inherent in contingent-fee representation cannot attract competent counsel in the region. *Id*. Plaintiff has provided nearly identical evidence to what was ruled sufficient justification in *Claiborne*. (Mot. ¶¶ 12, 15–17).

The Court finds that Plaintiff's evidence is sufficient to justify the requested $184.88 rate under both the cost-of-living and special factor considerations.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Fees Under the Equal Access to Justice Act [30] is **GRANTED** in the amount of $10,431.32 plus costs in the amount of $16.70. This amount, after any applicable offset, shall be made payable to Plaintiff's counsel.

E N T E R:

Dated: June 18, 2014

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States Magistrate Judge